UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMIKO HARRIS-MORRISON, individually and on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>SABERT CORPORATION,<br><br>    Defendant. | Case No. 1:23-CV-16120<br><br>**Hon. Edmond E. Chang** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

  Plaintiff Tamiko Harris-Morrison ("**Plaintiff**"), by and through her counsel, respectfully submits this Response in Opposition to Defendant Sabert Corporation's ("**Sabert**" or "**Defendant**") Motion to Dismiss, or in the Alternative, for a More Definite Statement (the "**Motion**").

**I. INTRODUCTION**

  On September 11, 2023, Plaintiff commenced this action by filing a Class Action Complaint (the "**Complaint**", Dkt. No. 1-1, Ex. A, pp. 9-23) in the Circuit Court of Cook County, Illinois. *See* Dkt. No. 1, ¶ 1. The Complaint states a plausible claim that Defendant violated the rights of Plaintiff and numerous other Illinois residents by improperly requesting their genetic information during a physical conducted by a third-party medical provider at Defendant's facility in violation of the Illinois Genetic Information Privacy Act, 410 ILCS 513/25 ("**GIPA**"). *Id.*, ¶¶ 25-35, 37-40. On November 20, 2023, Defendant removed the matter to this Court solely on the basis of federal question jurisdiction. Dkt. No. 1. In support of removal, Defendant alleges that

1

Plaintiff's claim is subject to preemption under the Employment Retirement Income Security Act of 1974 ("**ERISA**"). Dkt. No. 1. On November 27, 2023, Defendant filed the Motion and asked the Court to dismiss Plaintiff's claim due to ERISA's preemptive effect and because the Complaint fails to state a claim under Fed. R. Civ. P. 8; or in the alternative, for an order to file a more definite statement of Plaintiff's claims.

The parties met and conferred to discuss the Complaint's allegations prior to Defendant even filing for removal and pinpointed precisely the actions by Defendant that Plaintiff alleges are in violation of GIPA. On the basis of the parties' exchange of information, Defendant sought removal on the grounds that ERISA preempts Plaintiff's GIPA claim. *See* Dkt. No. 1, ¶ 7. However, GIPA simply does not "relate to" ERISA because GIPA does not affect the determination of an employee's eligibility for benefits or the impact on the method of calculating benefits due. In fact, by enacting the Genetic Information Nondiscrimination Act of 2008, Congress has made clear it does not intend for ERISA to preempt Plaintiff's claim. The Complaint sufficiently pleads that Defendant violated GIPA by requesting the putative class to disclose their genetic information as a condition of employment with sufficient particularity to put Defendant on notice of its alleged violations. As such, Defendant's Motion should be denied in its entirety.

Plaintiff disputes Defendant's assertion that federal subject matter jurisdiction applies under complete ERISA preemption. Plaintiff further notes that the Court may not have subject matter jurisdiction via diversity jurisdiction or the Class Action Fairness Act ("**CAFA**") because Defendant's Notice of Removal does not contain the requisite jurisdictional pleadings. However, in the interest of judicial economy, Plaintiff acknowledges that the Complaint alleges on information and belief that the threshold is likely met and does not intend to dispute that subject matter jurisdiction is available.

Thus, the Court should deny Defendant's Motion and permit Plaintiff and the putative class to pursue their claims based on Defendant's unlawful requests for genetic information.

## II. BACKGROUND

### A. GIPA Prohibits Defendant from Requesting Plaintiff's Genetic Information

GIPA prohibits an employer from requesting genetic information as a condition of employment. *Bridges v. Blackstone*, 66 F.4th 687, 691 (7th Cir. 2023) (citing 410 ILCS 513/25(c)(1)). In setting forth its intent in passing GIPA, the Legislature explained that the statute would "limit [] the use or disclosure of, and requests for, protected health information to the minimum necessary." *Id.*, (citing 410 ILCS 513/5(5)).

Section 25(a) of GIPA provides that companies that employ individuals in Illinois "shall treat genetic testing and genetic information in such a manner that is consistent with the requirements of federal law, including but not limited to the Genetic Information Nondiscrimination Act of 2008[.]" Section 25(c) sets out directions regarding what employers can and cannot do with regard to genetic information. These include that "[a]n employer, … shall not directly or indirectly do any of the following:

> (1) solicit, request, require or purchase genetic testing or genetic information … as a condition of employment, [or] preemployment application…;
> (2) affect the terms, conditions, or privileges of employment, preemployment application, … , or terminate the employment… of any person because of genetic testing or genetic information …;
> (3) limit, segregate, or classify employees in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee … because of genetic testing or genetic information…; and
> (4) retaliate through discharge or in any other manner against any person alleging a violation of this Act[.]"

410 ILCS 513/25(c).

The Legislature revised GIPA in 2008 to harmonize the statute with its federal counterpart, the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. § 2000ff, *et seq*. ("**GINA**"). GIPA utilizes the same definition of "genetic information" as GINA, which includes the manifestation of a disease or disorder in family members. *See* 410 ILCS 513/10; 42 U.S.C. § 2000ff(4)(A)(iii). "Family member" means, with respect to an individual, (i) the spouse of the individual; (ii) a dependent child of the individual, including a child who is born to or placed for adoption with the individual; (iii) any other person qualifying as a covered dependent under a managed care plan; and (iv) all other individuals related by blood or law to the individual or the spouse or child described in subsections (i) through (iii) of this definition. 410 ILCS 513/10.

The Legislature created a broad individual right of action to enforce GIPA, using the same language that it used in the Biometric Information Privacy Act ("**BIPA**"). *Compare* 740 ILCS 14/20(a) *with* 410 ILCS 513/40(a). Thereunder, "[a]ny person aggrieved by a violation of this Act" can seek liquidated damages. *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 29 (holding that the same language used in GIPA granted a similarly broad private right of action, regardless of whether the person sustained actual pecuniary damages).

In sum, Plaintiff's claim against Defendant is founded exclusively on Section 25(c)(1) of GIPA, which prohibits employers from inquiring about the manifestation of a disease or disorder in the spouse, dependent, or any other individual related by blood or law to a prospective employee as a condition of employment. As such, any company that employs individuals in Illinois and makes such a solicitation or request violates GIPA, and consequently, any person to whom the request is made is aggrieved by that request.

### B. The Complaint Alleges that Defendant Requested Plaintiff's Genetic Information in the form of Family Medical History

In the Complaint, Plaintiff alleges that Defendant improperly solicited Plaintiff's genetic information during her employment by requiring her to disclose her family medical history at a physical examination. Complaint, ¶¶ 26-27. The physical was conducted at Defendant's Cicero Facility by a third-party medical provider who was permitted by Defendant to perform the examinations. *Id.* During the physical, the provider verbally requested Plaintiff to disclose whether medical conditions with genetic predispositions had manifested in her parents, such as cancer and diabetes, and gave Plaintiff a written questionnaire that requested the same information. *Id.*, ¶ 27-28. The Complaint further alleges that the physical was a condition of employment because Plaintiff was required to attend this physical examination. *Id.*, ¶¶ 33-35.

Taken as true in accordance with the standard at this stage of litigation, Defendant requested Plaintiff to disclose whether her family members had manifested medical conditions that may have a genetic basis, including cancer and diabetes, in an effort to predict whether Plaintiff was susceptible to such ailments. Defendant's alleged conduct is precisely that which the Legislature sought to prevent by enacting GIPA. As such, Defendant has sufficient context and notice to put the company on notice of Plaintiff's claim, and the Complaint properly pleads a claim for unlawful request of genetic information.

### C. The Complaint does not Reference an ERISA Plan

The Complaint makes no reference whatsoever to any employee benefits plan subject to ERISA. The only reference to ERISA in the record is derived from Defendant's self-serving declaration attached to its removal pleadings. *See* Dkt. No. 1. The Complaint does not allege that an ERISA plan exists, let alone that Plaintiff's claim is related to such a plan.

Defendant points to the Complaint's reference of a "workplace wellness program" in support of its claim that ERISA preempts Plaintiff's GIPA claim. *See* Motion, p. 5 ("Plaintiff alleges that Sabert, through a third-party medical provider, sought [Plaintiff's genetic information] … 'in furtherance of a workplace wellness program.'" (citing Complaint, ¶ 32)). But a cursory reading of the Complaint confirms that Defendant is intentionally misinterpreting this allegation in a weak attempt to argue that the Complaint tenuously relates to an ERISA plan.

Paragraph 32 simply states that Plaintiff did not "provide prior, knowing, voluntary, and written authorization to Defendant for the use of her genetic information in furtherance of a workplace wellness program." This allegation is clearly directed towards Section 25(e) of GIPA, which provides an exception for an unlawful request claim if an employer uses genetic information "in furtherance of a workplace wellness program" and "the employee provides written authorization[.]" The Complaint does not allege that Defendant has implemented a workplace wellness program or that Defendant sought Plaintiff's family medical history in furtherance of such a program. Rather, the Complaint alleges that, if Defendant contends an exception applies relating to a workplace wellness program, it nonetheless is liable because Plaintiff did not provide written authorization for Defendant to do so. Defendant's bad faith attempt to utilize this language against Plaintiff should be rejected.

### III. PLAINTIFF'S GIPA CLAIM IS NOT PREEMPTED BY ERISA

Defendant cannot dispute that Plaintiff sufficiently pleaded the facts necessary to establish a claim under the text of GIPA. Perhaps recognizing that the allegations in the Complaint satisfy the requirements to state a claim under GIPA, Defendant seeks immunity from its alleged violation of the statute by suggesting that Plaintiff's claim requires the parties to "litigate the propriety of administration of the employee benefits plan provided through Sabert and medical insurance

6

premiums related thereto, in addition to Sabert's and its employee benefit plan sponsor's compliance with ERISA[.]" *See* Motion, p. 6. This is unequivocally false. GIPA does not affect the determination of an employee's eligibility for benefits or the impact on the method of calculating benefits due; as such, GIPA does not relate to ERISA. A finding otherwise would directly contravene the clear intent of Congress that such claims may be litigated.

1. **Congress did not Intend for ERISA to Preempt Unlawful Request Claims**

ERISA's preemption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" described by ERISA. 29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan if it has a connection with or reference to such a plan." *Laborers' Pension Fund v. Miscevic*, 880 F.3d 927, 931 (7th Cir. 2018) (citing *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. College of Wis., Inc.*, 657 F.3d 496, 504 (7th Cir. 2011). "Therefore, ERISA preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan." *Id.* (internal quotations omitted)

ERISA does not preempt a state law claim "merely because it requires a cursory examination of ERISA plan provisions." *Id.* (quoting *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 780 (7th Cir. 2002)). "Indeed, some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* (citing *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 100 n.21 (1983)). "To determine whether a state law has the forbidden connection to ERISA, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Id.* (citing *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001); *see also Kolbe*, 657 F.3d at 504 ("The question whether a certain state action is preempted by federal law is one of congressional intent.").

In *Laborers' Pension Fund v. Miscevic*, the Seventh Circuit held that the Illinois Probate Act of 1975 was not preempted by ERISA. The law at issue in that case, 735 ILCS 5/2-6, was a "slayer statute" that barred recovery of plan benefits by reason of death to a person who caused the death. *Id.* at 930. The Seventh Circuit affirmed the trial court's holding that the slayer statute was not preempted by ERISA, thus a wife who murdered her husband was not entitled to receive the husband's vested pension benefit. *Id.* The court noted other decisions finding that "Congress could not have intended ERISA to allow one spouse to recover benefits after intentionally killing the other spouse." *Id.* at 934. The court contrasted the Illinois slayer statute with the Supreme Court's holding in *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001) where a Washington statute was preempted by ERISA because it required administrators to pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents and interfered with nationally uniform plan administration. *Id.* at 932-33.

Here, GIPA is akin to the Illinois slayer statute in that Congress could not have intended for ERISA to allow an employer to request the genetic information of its employees. This is evidenced by GINA – as mentioned above, Congress enacted GINA in 2008 and the Legislature then amended GIPA to harmonize the statute with its federal counterpart. Both GINA and GIPA prohibit employers from requesting genetic information. *Compare* 410 ILCS 513/25(c)(1) *with* 42 U.S.C. § 2000ff-1(b) ("It shall be an unlawful employment practice for an employer to request, require, or purchase genetic information with respect to an employee or a family member of the employee[.]") GIPA utilizes the same definition of "genetic information" as GINA, which includes the manifestation of a disease or disorder in family members. *See* 410 ILCS 513/10; 42 U.S.C. § 2000ff(4)(A)(iii). GINA even provides the same workplace wellness program exception enumerated in GIPA. *See* 42 U.S.C. § 2000ff-1(b)(2)(A). Thus, the post-ERISA enactment of

8

GINA clearly evidences that Congress did not intend for ERISA to preempt claims for an employer's unlawful request of genetic information. If Congress had intended for ERISA to preempt GIPA, it would not have enacted GINA in the first place.

Section 25(c) of GIPA merely requires employers to treat genetic information in a manner consistent with GINA and does not interfere with uniform nationwide plan administration.[1] As such, Plaintiff's unlawful request claim under GIPA is not preempted by ERISA. Defendant's argument to the contrary is undermined by the clear intent of Congress that such claims may be litigated on the merits.

> **2. Plaintiff's GIPA Claim is not Preempted by ERISA because the Claim Functions Irrespective of the Existence of an ERISA Plan**

Further, ERISA does not preempt Plaintiff's unlawful request claim because GIPA makes no reference to and functions irrespective of the existence of an ERISA plan. *See Hoogenboom v. Trs. of Allied Servs. Div. Welfare Fund*, No. 20-cv-4663, 2021 U.S. Dist. LEXIS 107209, at *16 (N.D. Ill. June 8, 2021) (finding that ERISA did not preempt a plaintiff's promissory estoppel claim at the motion to dismiss stage because such claims "arise not from the plan or its terms, but from the alleged oral representations made to the provider"); *see also Cretella v. Azcon, Inc.*, No. 20-cv-1482, 2020 U.S. Dist. LEXIS 201084, at *4 (N.D. Ill. Oct. 28, 2020) (remanding a plaintiff's claim for unlawful termination in violation of the Illinois Insurance Code: "In the end, the connection between Cretella's state law claim and her employee benefit plan is too tenuous, remote, and peripheral for ERISA's preemption provision to apply under the circumstances.")

---

[1] *See also* the U.S. Department of Labor's Employment Law Guide for ERISA, available at https://webapps.dol.gov/elaws/elg/erisa.htm ("The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits group health plans and group health insurance issuers from discriminating in health coverage based on genetic information. Plans and issuers may not use genetic information to adjust premium or contribution amounts for the group covered under the plan, request or require an individual or their family members to undergo a genetic test, **or request, require, or purchase genetic information for underwriting purposes or prior to or in connection with an individual's enrollment in the plan**.") (emphasis added)

GIPA makes no reference to an ERISA plan, and unlawful request claims alleging a violation of the statute function irrespective of the existence of an ERISA plan. Plaintiff is not seeking to recover benefits under the terms of an employee benefit plan nor is she asking the Court to enforce her rights under the plan's terms. Defendant's liability arises from the duties imposed by GIPA, and the Court is not required to interpret or apply the terms of an employee benefit plan to resolve Plaintiff's claim. As such, her claim is not preempted by ERISA.

### IV. PLAINTIFF ACKNOWLEDGES THAT FEDERAL SUBJECT MATTER JURISDICTION MAY APPLY

As explained above, Plaintiff disagrees with Defendant's assertion that the Court has federal subject matter jurisdiction under ERISA preemption. Plaintiff takes the position that subject matter jurisdiction may be unavailable via diversity jurisdiction or CAFA because Defendant has not met its jurisdictional pleading burden in its removal pleadings. However, in light of the Complaint's allegations which can be construed to support a finding that the jurisdictional threshold has been met, Plaintiff will not dispute that the jurisdictional threshold is met here in the interest of judicial economy.

Defendant, as the party asserting federal jurisdiction, has the burden of showing that the jurisdictional requirements are satisfied. *See Morris v. Nuzzo*, 718 F.3d 660, 664-65 (7th Cir. 2013) ("A defendant removing a case on diversity grounds must not only demonstrate that the case satisfies the requirements of 28 U.S.C. § 1332(a)[.]") "As in removal in non-CAFA diversity actions, the party asserting federal jurisdiction under CAFA must establish that the requirements of § 1332(d) are satisfied." *Roppo v. Travelers Commer. Ins. Co.*, 869 F.3d 568, 578. "To meet this burden, a defendant seeking to remove to federal court must file in the district court a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Roppo*, 869 F.3d at 578. Thus, Defendant bears the burden of establishing that the amount in controversy exceeds

$75,000, exclusive of interest and costs, and is between citizens of different states – or, in the alternative, that the amount in controversy exceeds $5 million for a putative class exceeding 100 people.

Here, Defendant has failed to meet its burden. Although there appears to be no dispute that there is complete diversity between the parties (see Complaint, ¶¶ 10-11), the Complaint does not allege that the amount in controversy exceeds $75,000. The size of the putative class is unclear in the Complaint (because Plaintiff cannot know the size of the class, which must be ascertained from Defendant's records) and was not clarified in Defendant's removal pleadings. When removal is based on diversity jurisdiction, "[a] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Defendant makes no such allegation here. *See* Dkt. No. 1.

However, Plaintiff acknowledges that the Complaint alleges on information and belief that the jurisdictional threshold is satisfied here. *See* Complaint, ¶ 45 ("The exact number of class members is unknown and is not available to Plaintiff at this time, but Defendant employs over 1,000 people in Illinois, and it is believed that all or most of those individuals will fall within the proposed Class.") Thus, in the interest of judicial economy, Plaintiff does not intend to dispute that the jurisdictional minimum has been satisfied in light of the Complaint's prayer for statutory damages of $15,000 or actual damages, whichever is greater, for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2) or, in the alternative, statutory damages of $2,500 or actual damages, whichever is greater, for each negligent violation of GIPA pursuant to 410 ILCS 513/40(1).

11

V.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order: (i) denying Defendant's Motion in its entirety; and (ii) granting such further and additional relief as this Court deems reasonable and just.

Dated: January 9, 2024                             Respectfully submitted,

                                                       */s/ Kyle D. McLean*
                                                       Kyle D. McLean (SBN 6344126)
                                                       SIRI & GLIMSTAD LLP
                                                       700 S. Flower Street, Suite 1000
                                                       Los Angeles, CA 90017
                                                       T. (213) 376-3739
                                                       E. kmclean@sirillp.com

                                                       David J. DiSabato
                                                       SIRI & GLIMSTAD LLP
                                                       745 Fifth Avenue, Suite 500
                                                       New York, NY 10151
                                                       T. 212-532-1091
                                                       E. ddisabato@sirillp.com

                                                       Edward A. Wallace
                                                       Mark R. Miller
                                                       Molly C. Wells
                                                       WALLACE MILLER
                                                       150 N. Wacker Drive, Suite 1100
                                                       Chicago, IL 60606
                                                       T. (312) 261-6193
                                                       E. eaw@wallacemiller.com
                                                         mrm@wallacemiller.com
                                                         mcw@wallacemiller.com

                                                       COUNSEL FOR PLAINTIFF AND THE PUTATIVE CLASS

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 9, 2024 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

*/s/ Kyle D. McLean*