**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TAMIKO HARRIS-MORRISON, individually and on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SABERT CORPORATION, <br><br> Defendant. | Judge Edmond E. Chang <br><br> Case No. 1:23-cv-16120 |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

Defendant Sabert Corporation ("Sabert" or "Defendant"), by and through its undersigned attorneys, Foley & Lardner LLP, respectfully submits the following reply in support of its Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for a More Definite Statement ("Motion"):

**INTRODUCTION**

Plaintiff's Opposition effectively admits this Court has jurisdiction by way of both diversity jurisdiction and the Class Action Fairness Act ("CAFA"). She thus concedes this Court can and should adjudicate this matter.

As for whether federal question jurisdiction lies and how ERISA applies, Plaintiff argues that her single claim against Sabert is not preempted for two reasons: (1) because Congress enacted a federal statute similar to GIPA after the enactment of ERISA, that must mean Congress did not intend to preempt a statute like GIPA; and (2) merely because Plaintiff's Complaint does not specifically allege the existence of an ERISA-covered plan, that precludes ERISA preemption. Both arguments quickly fail. Additionally, Plaintiff's staying silent on what this case is about –

seemingly hiding behind the superficial nature of her allegations to avoid the correct outcome on this motion – further highlights that ERISA preemption is not merely possible here, it is a certainty. The Court should not entertain such tactics, and either dismiss this case with prejudice now or put it to Plaintiff to concede what is really at issue so the Court can apply ERISA preemption.

## ARGUMENT

To analyze a preemption defense, courts must first consider Congress's intent in passing the potentially preemptive federal statute. *See Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046 (7th Cir. 2013). There is, in fact, no ambiguity about ERISA's complete preemptive effect because it expresses "a clear and manifest purpose otherwise" by way of its broad and express preemption clause, which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Further, ERISA applies "to any employee benefit plan if it is established or maintained by any employer engaged in commerce." 29 U.S.C § 1003(a)(1). Courts have accordingly held that if any state law claim "is within the scope of…ERISA it is completely preempted, no matter how the [plaintiffs] have characterized it." *Garrity v. Sun Life & Health Ins. Co.*, 596 F. Supp. 3d 1111, 1115 (N.D. Ill. Mar. 31, 2022) (quoting *Klassy v. Physicians Plus Ins. Co.*, 371 F.3d 952, 954 (7th Cir. 2004)).

Even as her Opposition denies that ERISA preemption applies, Plaintiff steadfastly avoids providing the Court the information needed to support such arguments. She makes no effort to explain for the Court's benefit anything more about this "workplace wellness program" superficially alluded to in the Complaint, but also carefully avoids denying the factual premises discussed in the conversations between counsel noted in Sabert's removal papers and referred to in footnote 1 and Section III of Sabert's Motion. Such tacit concession that this case centers around exactly what Sabert has said it does – a wellness benefit within an ERISA-governed health

insurance plan that permits employees to reduce their premium cost for group health insurance coverage – is itself all the Court needs to apply ERISA preemption because Plaintiff has made it clear she is attempting to relate state law rights to an ERISA plan. *See, e.g., Jacobson v. Humana Ins. Co.*, No. 05 C 1011, 2005 U.S. Dist. LEXIS 13605, at *6 (N.D. Ill. June 6, 2005). Plaintiff's legal arguments then make the case for preemption more clear – indeed, if she has any claim arising from allegedly improper collection of genetic information, it arises directly under ERISA itself. That makes preemption unavoidable and requires dismissal of her state law cause of action.

**I.    Plaintiff's Careful Avoidance Of Offering The Court More Details Concedes This Case Relates To A Wellness Benefit Existing Within The Umbrella Of An ERISA Plan.**

It stands out from her Opposition how carefully Plaintiff tries walking a line between (i) claiming her superficial pleadings go far enough to state a valid claim that avoids ERISA preemption and (ii) avoiding any suggestion of more details relative to what the facts will show to indicate this case relates to something other than an ERISA plan. Instead, Plaintiff merely repeatedly refers to her "workplace wellness program" allegations as sufficient to both state a claim and avoid preemption without offering more context one way or another. Critically, Plaintiff makes no attempt to contradict what Sabert has averred this case is about – seemingly conceding what the facts of this case will establish.

If this matter truly did not relate to an ERISA plan and thus avoided preemption, one might have expected Plaintiff to say so by indicating to the Court the specific factual reasons why ERISA does not apply and requesting to replead so as to withstand dismissal. Instead of offering the Court reasons to see the case differently, she offers only misplaced legal arguments that confirm ERISA's preemptive effect. As demonstrated *infra*, because Plaintiff has not offered anything substantive to show her alleged violation of state law rights relates to something *other* than an ERISA plan,

and her arguments in fact show any claim she might have from the allegations must arise *directly* under ERISA, preemption clearly applies and the Court should dismiss her GIPA cause of action with prejudice.

**II. If Plaintiff Even Has A Claim, It Arises Directly Under ERISA.**

ERISA creates various causes of action a plaintiff can bring *directly* under its comprehensive and preemptive scheme, one of which explicitly provides for penalties relating to non-compliant "use of genetic information." 29 U.S.C. § 1132(c)(10). This provision provides a cause of action against plan sponsors that fail to, among other things, "meet the requirements of subsection (a)(1)(F), (b)(3), (c), or (d) of section 1182 of this title." 29 U.S.C. § 1132(c)(10). Turning to one of those specific provisions, 29 U.S.C. § 1182(d) prohibits a plan from "request[ing], requir[ing], or purchas[ing] genetic information with respect to any individual prior to such individual's enrollment under the plan or coverage in connection with such enrollment." ERISA also bestows upon participants in a covered plan private rights of action to enforce alleged violations of the rights the statute establishes, *see* 29 U.S.C. § 1132(a)(1)(B), and if a plaintiff alleges a state law claim falling within the scope of an ERISA-created private right of action that depends upon the terms of the ERISA plan documents, the claim itself arises directly and only under ERISA and is completely preempted. *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 725 (7th Cir. 2017) (participants in benefit plans have standing to bring claims alleging violations of ERISA); *Garrity*, 596 F. Supp. 3d 1115-16 (finding state law claims preempted when it addresses the same rights specifically recognized by ERISA).

Plaintiff's Opposition certainly indicates, if not outright concedes, that the alleged prohibited collection of genetic information in connection with a wellness benefit contained within a group health insurance participation is the essence of this case. Plaintiff's allegations thus *directly*

4

touch upon ERISA's prohibition against non-compliant[1] use of genetic information. No "matter how [Plaintiff has] characterized it," her claim under GIPA alleging improper collection of genetic information in the context of a workplace wellness program is thus plainly a "cause of action [that] falls within the scope of an ERISA provision that the plaintiff can enforce." *Garrity*, 596 F. Supp. 3d at 1115-16.

### III. Plaintiff's Legal Arguments Offer No Basis To Allow This Case To Move Forward.

None of the legal arguments advanced in Plaintiff's Opposition change the nature of what this case is and what ERISA requires occur with it. The Court can swiftly dispose of them.

Her contention that because Congress enacted the Genetic Information Nondiscrimination Act of 2008 ("GINA") after ERISA, it could not have intended for ERISA to preempt GINA, and because of thematic overlaps between GIPA and GINA, that must mean a claim under GIPA likewise avoids preemption. This argument fails on its face. For starters, one federal statute does not "preempt" another federal statute – preemption occurs under the Supremacy Clause when a federal statute displaces state law. *See* U.S. CONST. Art. VI, cl. 2; *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 138 S. Ct. 1461, 1479 (2018); *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992). The argument that Congress did not intend ERISA to preempt GINA and GIPA therefore escapes preemption thus depends on an illogical and legally impossible fallacy. Second, Congress enacted GINA's provisions regarding genetic information vis-à-vis

---

[1] By no means does Sabert mean to suggest or otherwise admit Plaintiff might have a valid cause of action arising directly under ERISA, and if Plaintiff attempts to bring one, Sabert will prevail upon any such claim. The point is simply that Plaintiff's mere allegation of non-compliant collection of genetic information, within the confines of this case, necessarily implicates rights created directly by ERISA, thus requiring dismissal of this specific case.

group insurance plans as an amendment to ERISA[2], and nothing in the amendment states or otherwise indicates Congress intended that ERISA, as amended by GINA, should not preempt ancillary state statutes. *See Maness v. Vill. of Pinehurst*, 522 F. Supp. 3d 166, 172 (M.D.N.C. Feb. 23, 2021). If anything, the fact that Congress specifically addressed use of genetic information in group insurance plans by amending ERISA reinforces how Plaintiff's claim here *directly* relates to ERISA and triggers preemption.

Plaintiff's resort to similarities between provisions of GIPA and GINA curiously reinforces this point, rather than demonstrate how ERISA as amended by GINA permits GIPA claims touching directly on ERISA-covered matters can co-exist. For example, Plaintiff contends that because both GINA and GIPA contain provisions regarding "workplace wellness benefits," this must mean (perhaps harkening back to the legally impossible "ERISA does not preempt GINA" assertion) that state law touching on ERISA rights can survive. But in making this argument, Plaintiff ignores that through GINA, Congress was careful to preserve ERISA's superiority relative to employer-sponsored group insurance plans, noting that GINA's provisions shall not be construed "to provide for enforcement of … any requirement or prohibition applicable to an employer" and do "not prohibit any activity of [a group health insurer offering a group health insurance plan] that is authorized for the plan or issuer under any provision" of ERISA's sections regulating collection of genetic information. *See* 42 U.S.C. §§ 2000ff-8(a)(2)(B); 2000ff-8(a)(2)(B)(ii). In other words, GINA itself recognizes ERISA's superior effect with respect to the same aspects of genetic information as they relate to employer-sponsored group health insurance

---

[2] *See* Congressional Research Service, *The Genetic Nondiscrimination Act of 2008 and the Patient Protection and Affordable Care Act of 2010: Overview and Legal Analysis of Potential Interactions*, at https://crsreports.congress.gov/product/pdf/R/R41314/10, at 1 (noting that Title I of GINA, which prohibits discrimination in health insurance based on genetic information, "amends the Employee Retirement Income Security Act of 1974").

plans raised by Plaintiff in this action. If Congress specifically acknowledged ERISA's preeminence over GINA's enforcement mechanism vis-à-vis certain areas such as employer-sponsored group benefit plans, a state law modeled after GINA must also necessarily subordinate to ERISA and fall within its broad preemptive sweep. Plaintiff's attempt to draw similarities between GINA and GIPA operates as a concession that ERISA – and ERISA alone – applies here and the Court cannot separate her GIPA cause of action from an ERISA analysis.

None of the authority cited by Plaintiff improves her situation. For example, in alleging a promissory estoppel claim against the employer, promises made by the defendant in *Hoogenboom* were not ERISA preempted because the alleged promises occurred outside the administration of the applicable ERISA-governed plan. *Hoogenboom v. Trs. of Allied Servs. Div. Welfare Fund*, No. 20-cv-4663, 2021 U.S. Dist. LEXIS 107209, at *16-17 (N.D. Ill. June 8, 2021). Plaintiff's refusal to suggest to the Court that anything about this case exists outside the administration of an ERISA plan (in the form of a wellness credit allowing for reduced premium cost) makes *Hoogenboom* irrelevant. *Cretella v. Azcon, Inc*. is likewise inapplicable. In that case, the plaintiff alleged unlawful termination of employment for refusing consent to be insured under the Illinois Insurance Code. No. 20-cv-1482 2020 U.S. Dist. LEXIS 201084 (N.D. Ill. Oct. 28, 2020). However, in that matter, the plaintiff did not seek to enforce any rights under ERISA or the terms of the employee benefit plan – she merely claimed unlawful retaliation which did not require examination of any ERISA provisions or benefit plan rights. *Id*. at *4. Here by contrast, Plaintiff has teed up alleged rights (not to have genetic information improperly collected in connection with benefits coverage) directly created by ERISA itself with a corresponding remedy, if true. *See* 29 U.S.C. § 1132(c)(10).

No matter how she characterizes her claim (or perhaps more accurately, carefully avoids disclosing its true nature), what is now clear is that whatever rights Plaintiff alleges to have had

7

violated and now seeks to enforce, they specifically arise under ERISA and relate to ERISA. Plaintiff's preemption analysis here is erroneous, and consequently must fail.

### IV.     Plaintiff's Refusal To Clarify Demands Dismissal Or A More Definite Statement.

As noted, Plaintiff makes no effort to explain for the Court's benefit more about this "workplace wellness program" described in the Complaint, but also does not deny the factual premises discussed in the conversations between counsel noted in Sabert's removal papers and referred to in footnote 1 and Section III of Sabert's Motion. The Court can certainly interpret this artful hiding behind her own pleadings as Plaintiff's tacit concession that ERISA does now and will always apply here and dismiss with prejudice now. *See Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1387, 1389 (N.D. Ill. 2016) (granting defendant's motion to dismiss after plaintiff "seem[ed] to accept … or at least has not argued differently" that a "complete defense" to plaintiff's claims existed).

In the alternative to dismissal with prejudice, and at a minimum, the Court should demand Plaintiff make plain what this case is about so it can determine how to apply the law and whether it can quickly dispose of this case as Sabert contends it should be. If the Court is not inclined to dismiss with prejudice now based on Plaintiff's tacit admissions and legal arguments making plain this case <u>directly</u> implicates ERISA, for purposes of efficiency, <u>Sabert proposes this motion be set for oral argument so the Court can address these questions to Plaintiff's counsel, and then if satisfied ERISA will apply, dismiss with prejudice</u>. In the alternative, whether through an order for a more definite statement under Fed. R. Civ. P. 12(e) or dismissal with leave to amend, Sabert and the Court are entitled to either an explanation, based on factual allegations, that this case does not in fact relate to administration of benefits in the form of premium cost reduction, or a straightforward acknowledgement that it does.

## CONCLUSION

For the foregoing reasons, Sabert respectfully requests the Court grant its Motion to Dismiss, or in the Alternative for a More Definite Statement.

Dated: January 24, 2024

Respectfully submitted,

*/s/ Christopher Ward*

Christopher Ward
John Litchfield
Patrick McMahon
Samantha Saddler
CWard@foley.com
JLitchfield@foley.com
PMcmahon@foley.com
SSaddler@foley.com
Foley & Lardner LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654
312.832.4500
312.832.4700

*Attorneys for Sabert Corporation*

## **CERTIFICATE OF SERVICE**

I, Christopher Ward, an-attorney, hereby certify that on January 24, 2024, I caused the foregoing DEFENDANT'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS to be filed through the Court's CM/ECF system, which shall send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.

/s/ *Christopher Ward*
Christopher Ward