UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TAMIKO HARRIS-MORRISON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:23-CV-16120 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| SABERT CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Tamiko Harris-Morrison, while employed by Sabert Corporation, was required to submit to a physical examination during which her genetic information was allegedly collected. R. 1-1, Compl. ¶¶ 27–31, 36.[1] Harris-Morrison originally brought this proposed class action suit in state court, alleging that Sabert violated the Illinois Genetic Information Privacy Act, 410 ILCS 513/25. *Id.* ¶¶ 12–13, 37–41, 50–59. Sabert removed the case to federal court based on federal-question jurisdiction, arguing that in this context the state law claim is preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* R. 1, Notice of Removal, ¶¶ 5–9. Harris-Morrison concedes that removal is proper, but only because of diversity jurisdiction. R. 15, Pl.'s Resp. at 10–11. Sabert now moves to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis of ERISA preemption, or in the alternative, moves for a more definite statement under Rule 12(e). R. 7, Def.'s Mot.; R. 8, Def.'s Br. at 5–7. For the reasons discussed below, the dismissal motion

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

based on preemption is denied, though without prejudice to bringing an early sum-mary judgment motion. The motion for more definite statement is denied.

## I. Background

In evaluating the motion to dismiss, the Court accepts as true all factual alle-gations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Harris-Morrison is a citizen of Illinois. Compl. ¶ 10. Sabert is incorporated and headquartered in New Jersey. *Id.* ¶ 11. Around June 2013, Harris-Morrison applied for a Machine Operator position at Sabert. *Id.* ¶ 25. She was hired and was employed by Sabert from around June 2013 through March 2020. *Id.* ¶ 36. Around June 2019, Harris-Morrison was required to undergo a physical examination at work, which was performed by a third-party medical provider at the Sabert facility where she worked. *Id.* ¶ 27. The provider requested Harris-Morrison to respond to a written questionnaire that asked whether she had a family history of various diseases and disorders. *Id.* ¶ 28. After completing the paperwork, Harrison-Morrison met with the provider one-on-one. *Id.* ¶ 29. The provider verbally asked about her and her family's medical conditions and history and noted her answers in a paper file. *Id.* ¶¶ 29–30.

Harrison-Morrison alleges that the medical conditions that she was asked about during the physical examination—including cardiac health, cancer, and diabe-tes—have genetic predispositions, Compl. ¶¶ 27–28, and that by disclosing them, she revealed her genetic information, *id.* ¶ 31. Although the examination took place six years after she began working for Sabert, Harrison-Morrison believes that the disclo-sure of genetic information was a condition of employment because Sabert required

2

her to attend the examination. *Id.* ¶¶ 33–34, 36. She also believes that, during the hiring process and on an annual basis thereafter, Sabert routinely asks employees and prospective employees to provide family medical histories as a condition of employment. *Id.* ¶ 37.

In September 2023, Harris-Morrison filed a proposed class action against Sabert in the Circuit Court of Cook County, Illinois, on behalf of herself and similarly situated employees and prospective employees. Compl. at 1, 10. She estimates that Sabert employs over 1,000 people in Illinois, and that all or most of them fall within her proposed class. *Id.* ¶ 45. She claims that Sabert violated the class members' privacy rights to genetic information as protected by the Genetic Information Privacy Act (often called GIPA in these types of cases), which prohibits soliciting, requesting, or requiring genetic information of a person or a family member of a person as a condition of employment or pre-employment application. 410 ILCS 513/25; Compl. ¶¶ 50–58. The Complaint says that Harris-Morrison did not provide Sabert with any written authorization "for the use of her genetic information in furtherance of a workplace wellness program." *Id.* ¶ 32.

In November 2023, Sabert filed its Notice of Removal in this Court. Notice of Removal. Sabert reads the Complaint as alleging that Harris-Morrison provided her family medical history "in furtherance of a workplace wellness program." *Id.* ¶ 7. Sabert argues that any such workplace wellness program is controlled by the employee benefit plans that Sabert provides, and that Harris-Morrison's state law claim is therefore preempted by the Employee Retirement Income Security Act (ERISA), 29

U.S.C. § 1001 *et seq. Id.* Sabert thus bases its removal on federal-question jurisdiction. *Id.* ¶ 9. Although Harris-Morrison disputes preemption and federal-question jurisdiction, she concedes that the Court has diversity jurisdiction under the Class Action Fairness Act of 2005 (CAFA), Pub. L. 109–2, 119 Stat. 4 (2005). Pl.'s Resp. at 10–11.

Also based on the theory of ERISA preemption, Sabert now files a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot.; Def.'s Br. at 5–7. Alternatively, Sabert moves for a more definite statement to require that Harris-Morrison clarify the link between her state law claim and any employee benefit plan. Fed. R. Civ. P. 12(e); Def.'s Mot.; Def.'s Br. at 3, 8.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. See Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). In general, a 12(e) motion is appropriate when the "pleading fails to specify the allegations in a manner that provides sufficient notice." *Swierkiewicz*, 534 U.S. at 513–14.

### III. Analysis

Sabert's motion raises three questions. The first is whether the Court has subject matter jurisdiction, and if so, on what basis. The second is whether ERISA preempts Harris-Morrison's state law claim, thereby warranting dismissal of the Complaint. The third is, if the Complaint survives a 12(b)(6) motion, whether a Rule 12(e) motion for a more definite statement should be granted. The Court will address each of these questions in turn.

5

## A. Subject Matter Jurisdiction

Both parties assert that there is subject matter jurisdiction over the case, but they disagree on the specific basis. As explained below, the Court's subject matter jurisdiction more securely rests on diversity rather than federal-question jurisdiction.

### 1. Diversity Jurisdiction

An action in state court may be removed to federal court if it could have originally been filed there. 28 U.S.C. § 1441(a). Under CAFA, a class action can be filed in federal court if: "(1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant ("minimal diversity"); *and* (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate." *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017) (emphasis in original); *see* 28 U.S.C. § 1332(d). For the third requirement, "we generally accept the plaintiff's good-faith allegations of the amount in controversy to establish diversity jurisdiction." *Roppo*, 869 F.3d at 579. If the amount exceeds $5 million, "the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011).

Harris-Morrison concedes—rightly so—that the Court has diversity jurisdiction under CAFA. Pl.'s Resp. at 10–11. First, Harris-Morrison estimates the size of the class to be "all or most of" the more than "1,000 people" employed by Sabert in Illinois, which exceeds the 100-member threshold. Compl. ¶ 45. Second, Harris-Morrison herself is a citizen of Illinois, and Sabert is a citizen of New Jersey, the state of its incorporation and headquarters. *Id.* at ¶¶ 10–11. So the minimal-diversity

6

requirement is met. Third, the amount in controversy is also satisfied. Harris-Morri-son seeks, among other things, statutory damages of $15,000 or actual damages, whichever is higher, for each alleged intentional or reckless GIPA violation. *Id.* ¶ 60. Multiply $15,000 by 1,000 people, and the class could possibly recover $15 million, well above the $5 million threshold. In sum, CAFA's diversity-jurisdiction require-ment is satisfied.

## 2. Federal Question Jurisdiction

Because the Court has diversity jurisdiction, it is not strictly necessary to an-alyze Sabert's theory of federal-question jurisdiction based on ERISA preemption. But because preemption will still be discussed later in this Opinion, it is worth briefly addressing here the relationship between preemption and federal-question jurisdic-tion.

There are two types of preemption. The first is "conflict" preemption, which is a defense to a state law claim and cannot serve as a basis for federal-question juris-diction. *Wisconsin Interscholastic Athletic Ass'n v. Gannett Co.*, 658 F.3d 614, 620 (7th Cir. 2011). "Complete" preemption, on the other hand, can give rise to federal ques-tion jurisdiction because it means that the state law claim is in reality completely based on federal law. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–08 (2004). As explained below, the current Complaint permits no inference that Harris-Morrison's state law claim is completely preempted by ERISA. *See infra* III.B.1. So there is no federal question jurisdiction.

## B. Motion to Dismiss

Sabert argues that Harris-Morrison's state law claim should be dismissed because it is preempted by ERISA. Def.'s Br. at 6–7; R. 22, Def.'s Reply at 4–8. Though Sabert does not distinguish between complete and conflict preemption, because both can serve as a basis for dismissal, the Court will analyze each in turn.

## 1. Complete Preemption

If ERISA completely preempts Harris-Morrison's state law claim, then the claim must be dismissed because a cause of action for genetic privacy has no basis in federal law in this employee-benefits context. *See Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 425 (7th Cir. 2011). To determine whether a state law claim is completely preempted by ERISA, the initial inquiry is whether there is an ERISA employee benefit plan in which the plaintiff is a participant. *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 724 (7th Cir. 2017). Also, ERISA completely preempts a plaintiff's claim only if she could have brought it under ERISA's civil enforcement mechanism in 29 U.S.C. § 1132(a)(1)(B) (also known as § 502(a)(1)(B), when referred to as a section of ERISA rather than Title 29 of the U.S. Code). *Id.* (citing *Davila*, 542 U.S. at 207–08).

Any complete preemption argument in this case fails at the initial inquiry because it is not at all clear from the Complaint that an ERISA plan is involved. The alleged GIPA violation is largely confined to the context of a physical examination. Nowhere in the Complaint is there a mention of an employee benefit plan. Nor is it obvious that the physical examination necessarily relates to an employee benefit

8

plan. Sabert contends that the Complaint refers to a "workplace wellness program." Notice of Removal ¶ 4. But the relevant language cited by Sabert merely states that Harris-Morrison did *not* provide authorization to Sabert "for the use of her genetic information in furtherance of a workplace wellness program." Compl. ¶ 32. This negative statement does not support a positive inference that a "workplace wellness program" is involved. That inference is especially untenable—absent uncovering facts in discovery—when the statement appears to track the statutory language of GIPA to negate an exception to the prohibition on collecting genetic information. *See* 410 ILCS 513/25(e) ("An employer shall not use genetic information … in furtherance of a workplace wellness program … unless … the employee provides written authorization ….").

Granted, a plaintiff cannot succeed in avoiding complete preemption by disguising federal claims through artful pleading and strategic omissions. *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008). But the Complaint is so devoid of any mention of an employee benefit plan that the Court has no basis on which to infer complete preemption. Although Sabert has submitted a written declaration on the relevance of employer-sponsored insurance benefits to this case, R. 1-1, Ward Decl. ¶ 6, Sabert itself has elected not to rely on this information for this Rule 12 motion. Def.'s Br. at 3. Indeed, this declaration is outside of the Complaint, and thus outside of the Court's consideration of the Rule 12(b)(6) motion to dismiss. *See Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) ("In response to an ordinary 12(b)(6) motion, a

court simply examines the allegations in the complaint to determine whether they pass muster.").[3]

It is worth noting that even if discovery reveals the involvement of an ERISA plan, complete preemption is still unlikely, as Harris-Morrison probably could not have brought her claim under ERISA § 502(a)(1)(B). This provision states that a plan participant or beneficiary may sue to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" 29 U.S.C. § 1132(a)(1)(B). But Harris-Morrison is not suing for any benefits or rights under the plan; rather, she is seeking damages for violation of her privacy rights under state law. Although it is not impossible that a relevant ERISA plan's terms might touch on the collection of genetic information, the Court doubts that it would confer any privacy rights. Thus, any preemption would more likely take the form of conflict preemption. That is the next subject to tackle.

## 2. Conflict Preemption

ERISA preempts state laws that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). Any law that "governs a central matter of plan administration" or "interferes with nationally uniform plan administration," including "reporting, disclosure, and recordkeeping," is preempted by ERISA. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320–21 (2016) (cleaned up). Also, a state law claim is preempted if it "requires the court to interpret or apply the terms of an employee benefit plan" in

---

[3]The defense request for oral argument is denied as to this motion because argument is not a substitute for discovery at the pleading stage.

more than a cursory fashion. *Laborers' Pension Fund v. Miscevic*, 880 F.3d 927, 931 (7th Cir. 2018) (cleaned up).

Any conflict preemption argument fails at this stage for the same reason as complete preemption—it is not obvious from the Complaint that an ERISA plan is involved. The Complaint never mentions an ERISA plan, let alone its terms or administration. Without further discovery, the Court can neither "interpret or apply the terms" of any ERISA plan, nor analyze the connection between the alleged GIPA violation and ERISA plan administration.

Sabert contends that the federal Genetic Information Nondiscrimination Act of 2008 (sometimes called GINA for short), which offers protections for genetic information similar to those in GIPA, amends ERISA and thus strengthens the company's position that GIPA is preempted. Def.'s Reply at 6–7. This argument is unpersuasive. First, Sabert cites to a Congressional Research Service report to argue that *Title I* of GINA amends ERISA. Def.'s Reply at 6, n. 2. But it is *Title II* of GINA that addresses genetic discrimination in the employment context, which at least bears some similarity to the GIPA provision (410 ILCS 513/25) invoked by Harris-Morrison. *See* 42 U.S.C. § 2000ff. Second, Title II makes clear that it does not preempt state laws that provide equal or greater protections. 42 U.S.C.A. § 2000ff–8. Because of that anti-preemption provision, Title II does not share ERISA's broad preemptive force, whether or not it is incorporated by ERISA. *Cf. Gobeille*, 577 U.S. at 326 (explaining that the anti-preemption provision in the Affordable Care Act prevents it from

preempting state law, even though the requirements in the Act are incorporated in the heart of ERISA).

Given the current stage of the case, Sabert's motion to dismiss based on preemption is denied. But if discovery reveals that an ERISA plan is indeed involved, Sabert will have the opportunity to make another preemption argument, so the motion is denied without prejudice to a potential early summary judgment motion.

### 3. Discovery

Although the Complaint survives, further discovery may reveal facts supporting ERISA preemption (most likely conflict preemption, rather than complete preemption), depending on the terms of any employee benefit plan involved or any plan administration. The best way forward is to limit discovery, for now, to any potentially relevant ERISA plan.

One other category of discovery will be permitted, because the discovery will reveal either the strength or weakness of Harris-Morrison's claim on whether Sabert—as potentially distinct (or not) from the third-party medical provider—is responsible for the collection of genetic information at all. Harris-Morrison alleges that the family medical history requested by the third-party medical provider was in fact required by Sabert to avoid workplace injuries or death. Compl. ¶ 39. At this stage, the Court accepts this allegation as true. *Erickson*, 551 U.S. at 94. But if the workplace wellness program deployed by the medical provider is a generic program that applies to all employers serviced by the medical provider, then Sabert might not have played any role in the alleged collection of genetic information. On the other hand, if

Sabert adopted the program and had some measure of control over it, then the company could be on the hook for GIPA violations. In addition to the discovery into the alleged workplace wellness program, limited discovery is permitted on Sabert's role in the alleged collection of genetic information. For now, discovery is limited to the individual claims of Harris-Morrison. Class action-related discovery or class-certification discovery is premature at this point.

### C. Motion for a More Definite Statement

Sabert alternatively moves for a more definite statement under Civil Rule 12(e). This motion should be granted "only if the complaint is so unintelligible that the defendant cannot draft responsive pleading." *Rivera v. Lake Cnty.*, 974 F. Supp. 2d 1179, 1195 (N.D. Ill. 2013). Sabert's argument, in essence, is that the Complaint lacks the factual detail for it to make an ERISA preemption argument. Def.'s Br. at 3, 8. But Rule 12(e) "is designed to strike at unintelligibility rather than want of detail." *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 911 (N.D. Ill. 2007). In other words, the rule is "intended only to clear up confusion and not to replace traditional discovery." *Direct Commc'ns, Inc. v. Horizon Retail Const., Inc.*, 387 F. Supp. 2d 828, 831 (N.D. Ill. 2005). Whatever factual detail Sabert seeks through this motion can be obtained and offered through the limited discovery described above. The motion for a more definite statement is denied.

### IV. Conclusion

For the reasons discussed above, Sabert's motion to dismiss is denied, though without prejudice to potentially bringing an early summary judgment motion. The

alternative motion for a more definite statement is denied. The parties are permitted to conduct limited discovery on (1) whether an ERISA plan was the basis for the collection of genetic information; and (2) what role Sabert had in collecting the alleged genetic information from Harris-Morrison. The discovery is limited to Harris-Morrison's individual case for now. On or before January 15, 2024, the parties shall file a joint status report proposing the schedule for the limited discovery (as well as interim deadlines for issuing written discovery and for taking depositions, if needed). The report should also report any other matters that the parties wish to bring to the Court's attention.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 31, 2024